IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | |
|---|---|
| Regions Bank, | Civil Action No.: 8:09-1095-RBH-BHH |
| Plaintiff, | |
| vs. | **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| College Avenue Development, LLC, *et al.*, | |
| Defendants. | |

This matter is before the Court on the plaintiff's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. [Doc 81.] The plaintiff's motion is as to all defendants. *See id.* Only defendants College Avenue Development, LLC, Wildreth & Associates, LLC, Charles F. Paterno, and Jacquelyn N. Paterno have filed a response. [Doc. 159.]

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters involving litigation by individuals proceeding *pro se* are referred to a United States Magistrate Judge for consideration. The defendants in this case originally appeared *pro se.*

**FACTUAL BACKGROUND**

On or about October 25, 2007, defendant College Avenue obtained a Loan from the plaintiff for the purpose of financing the construction of a building in Clemson, South Carolina (the "Project"). (Cox Decl. ¶ 2.) To induce Regions Bank to lend money to College Avenue, TDA Development, LLC, Wildreth & Associates, LLC, Charles F. Paterno, and Jacquelyn N. Paterno, among others (the "Guarantors") executed to Regions Bank a written Guaranty Agreement dated October 25, 2007 (the "Guaranty") whereby the Guarantors, jointly and severally, unconditionally guaranteed to Regions Bank the full payment and performance of all of College Avenue's debts and obligations related to the Loan. (Cox

Decl., Ex. B.) Simultaneously, College Avenue also executed a Loan Agreement dated October 25, 2007 (the "Agreement"). *Id*. Ex. D.

The plaintiff made 12 advances to College Avenue pursuant to the Agreement. (Cox Decl., Ex. P.) Shortly after the last advance was made, TDA Construction LLC, the contractor for the Project, abandoned it and declared bankruptcy. (Cox Decl. ¶¶ 10, 13.) The plaintiff contends that the defendant College Avenue has failed to make monthly payments of interest on the Loan as, and when, due and that the loan amount is due and payable.

The defendants contend that the plaintiff made the last advance on the loan directly to TDA, in violation of the Agreement, under circumstances where it knew that TDA was not progressing on the Project, as required, and was in jeopardy of bankruptcy. The defendants contend, therefore, that the plaintiff's own conduct has exacerbated the amount of the outstanding loan and the inability of the parties to get at monies advanced (due to the bankruptcy of TDA). The precise details of the relative accusations will be discussed in greater detail below.

## APPLICABLE LAW

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might

return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

3

**DISCUSSION**

The plaintiff has moved for summary judgment on its claims against the defendant Guarantors of the loan for alleged monies due. As stated, the Guarantors include, defendants TDA Development, LLC; Wildreth & Associates, LLC; Charles F. Paterno; and Jacquelyn N. Paterno. The plaintiff has also moved for summary judgment as to its claims against the defendant College Avenue Development, LLC, for the balance on the Loan, as the borrower. Each of the Guarantors has filed counterclaims against the plaintiff for allegedly wrongful conduct in the execution of the Agreement and distribution of advances.

The defendants have pled counterclaims against the plaintiff for negligence, breach of contract, breach of contract accompanied by a fraudulent act, breach of fiduciary duty, and violation of the South Carolina Unfair and Deceptive Trade Practices Act. The defendants contend that they are not liable on some or all of the outstanding balance of the loan because of the allegedly wrongful acts of the plaintiff. All of the parties agree that if the counterclaims of the defendants have merit, then summary judgment on the plaintiff's claims is improvident. (Pl. Mem. Summ. J. at 6.) So the Court will consider the counterclaims in turn. And, because the undersigned believes that some of the defendants counterclaims should survive summary judgment, as will be discussed, it is recommended that the plaintiff's motion should only be granted, in part, only.

TDA Development, LLC has failed to appear in the action and is in default. An entry of default was entered against it, on May 26, 2009. [Doc. 28.] Notwithstanding, it seems that TDA would incidentally benefit from any determination of the Court that the plaintiff had breached either the contract or some duty owed the defendants, such that an actual default judgment would not be permissible in spite of TDA's absence. Accordingly, the Court will not enter judgment against TDA, insofar as it has concluded, *infra*, that issues of fact remain as to certain of the defendants' counterclaims. Likewise, other defendants who have not expressly responded are protected by this recommendation, to the extent it is

4

adopted by the district court and to the extent the plaintiff has intended to seek summary judgment against them.

The defendants generally contend that the plaintiff, in violation of the Agreement, (1) made more than one advance in a month's time; (2) ignored the recommendation of the Inspector of the Project that the 12th and last advance should not be made; and (3) departed from the regular practice of advancing the money to the borrower, defendant College Avenue, and instead paid the last advance directly to the contractor, TDA, who was near bankruptcy. The defendants have advanced various legal theories to recover for such alleged wrongful acts and to defend against the plaintiff's claim that money is owed by the defendants under the Agreement.

**I.     Breach of Contract**

The defendants first contend that such acts constitute a breach of contract. The Court believes issues of fact exist. In particular, the Court has concern over the circumstances of the 12th and final distribution under the Agreement. As stated, the defendant College Avenue contends that the plaintiff violated the loan Agreement by making more than one distribution in a month's time and by making the last distribution directly to the contractor, TDA Construction LLC. It is undisputed that the agreement limits disbursements to one per month. (Pl. Ex. D. ¶ 7.1 to Cox Decl.) Paragraph 7.1 of the Agreement provides that "[n]ot more than one advance shall be made during any calendar month. *Id*. It is undisputed that the plaintiff made two advances in the month of July, one on July 2, 2008, for $187,294.55 and the second on July 28, 2008, for $200,770.02. (See Pl. Ex. A.) It is also undisputed that the Agreement limited the plaintiff to making distributions either directly to the "Borrower," College Avenue, or "in such other manner as shall be mutually agreed upon by the Borrower and the Lender." (Pl. Ex. D. ¶ 8.1 to Cox Decl.)

The plaintiff contends, however, that (1) the provision regarding the quantity of advances is plainly for the benefit of the lender; (2) Raulston Travis, a principal of College Avenue, agreed to the final advance paid directly to TDA Construction, in accord with the Agreement; and (3) the defendant College Avenue suffered no real damages, even if a technical breach exists. To the undersigned, the matter is not so straightforward.

Critically, it is not the whole story to say that Travis was a principal of College Avenue. He also "managed and controlled" TDA Construction LLC. (Cox Decl. ¶ 11.) The plaintiff has not offered any serious evidence as to what capacity Travis acted, when he requested the distribution – whether as a principal of College Avenue, the borrower, or of TDA Construction, the contractor. As discussed, this fact is material insofar as the Lender was required to have the consent of the Borrower before making an advance to the contractor or anyone other than the Borrower. (Pl. Ex. D. ¶ 8.1 to Cox Decl.) If Travis was acting as a manager or principal of TDA Construction, then it seems that a jury could find that the disbursement was violative of the Agreement for want of Borrower's consent. *See id.* As to damages, if the disbursement was improper for lack of consent, then the defendant College Avenue was plainly injured insofar as it is now obligated for the amount of a wrongful advance paid to TDA Construction, directly, who is presently in bankruptcy (Cox Decl. ¶ 13).[1]

The Court also holds open the possibility that Travis was acting in some sort of dual agent capacity. In this instance, College Avenue may have no particular argument that the plaintiff acted improperly, as a matter of law. But, the Court need not, and cannot, resolve it. There is insufficient evidence to determine in what capacity Travis acted, either

---

[1] For this reason, the Court need not specifically consider whether Paragraph 7.1 of the Agreement is solely for the benefit of the defendant, lender. It seems reasonable that it would be, but it does not specifically say so. And, the present facts suggest that there are at least some circumstances where such a provision might enure to the benefit of the Borrower. The provision, arguably, operates as a limit on all parties to ensure that there is a controlled distribution of the money, such that mistakes in disbursements are not exacerbated, as potentially happened here.

6

exclusively for College Avenue, exclusively for TDA, or dually for both. It is an outstanding issue of fact.

The defendant also contends that the plaintiff violated the Agreement insofar as it ignored the recommendation of the Inspector, made in August 2008, that the 12th and final advance should *not* be made. (Def. Ex. D, Inspection Report No. 11.) The inspector found numerous things incomplete and stated that the actual progress of the Project "differs greatly" from the stated progress. *Id*. The Inspector actually stated that he did "not believe that sufficient funds exist[ed] to complete the project in its current state without a significant increase into loan equity by the Owner/Developer or his partners." *Id*.

Paragraph 7.1 of the Loan Agreement provides that "[n]o advance shall be due unless, in the judgment of the Lender and Inspector, all work done in the construction and equipping of the Improvements to the date of the advance has been done in a good and workmanlike manner." (Pl. Ex. D. ¶ 7.1 to Cox Decl.) The Agreement further provided that "[t]he Inspector shall . . . inspect the Project for requested advances, and shall approve advances, if appropriate. . . ." *Id*. ¶ 2.

It is undisputed that the plaintiff retained and relied upon inspection reports throughout the term of the project. (See Def. Ex. D.) The plaintiff argues, however, that it was not under any obligation to retain an inspector, in the first instance. The Agreement defines "Inspector" as "[t]he party named by the Lender, if any, for inspecting the progress of development of the Project." (Pl. Ex. D. ¶ 2 to Cox Decl.) The plaintiff claims, therefore, based on the phrase "if any," that retaining an inspector was within its discretion. By extension, the plaintiff contends that to accept or reject the recommendations of the Inspector, once retained, was also an exercise of its own discretion.

The plaintiff's position seems strained. Regardless of the discretion it arguably enjoyed to retain or not to retain an inspector, in the first instance, it seems that once the inspector is actually used and a recommendation solicited, the Agreement would constrain

7

the plaintiff not to ignore it. As stated, the Agreement provides that no advance shall be due unless, in the judgment of the Lender and Inspector, all work done in the construction and equipping of the Improvements to the date of the advance has been done in a good and workmanlike manner." (Pl. Ex. D. ¶ 7.1 to Cox Decl.) The judgment of the Inspector, as to the last payment, is that it should not have been paid. (Def. Ex. D., Inspector Report No. 11.) Notwithstanding, the plaintiff paid the contractor directly.

For all these reasons, the Court believes issues of fact exist as to the defendant College Avenue's counterclaim for breach of contract regarding the above discussed provisions. The defendant has also made a summary argument that the plaintiff violated the contracts implied covenant of good faith and fair dealing. Specifically, the defendant contends that the plaintiff failed to make payments to vendors of the defendant, which the plaintiff had previously promised to make. The defendant's allegations are largely non-specific and unsupported by any serious evidence or relevant legal citations. As to this element of the breach of contract cause of action, the Court does not believe that the record creates issues of fact from which a reasonable jury could find for the defendant.

**II.     Breach of Contract Accompanied by a Fraudulent Act**

The defendant further contends that the actions of the plaintiff also constitute a breach of contract accompanied by a fraudulent act. The Court would agree that issues of fact exist as to this claim. To recover for breach of contract accompanied by a fraudulent act, a plaintiff must show: "(1) a breach of contract; (2) fraudulent intent relating to the breach of the contract and not merely to its making; and (3) a fraudulent act accompanying the breach." *Harper v. Ethridge*, 348 S.E.2d 374, 378 (S.C. Ct. App. 1986) (citing *Floyd v. Country Squire Mobile Homes, Inc.*, 336 S.E.2d 502 (S.C. Ct. App. 1985)). The Court has already concluded that issues of fact exist as to the first element.

The parties agree that a fraudulent act is an act characterized by dishonesty in fact, unfair dealing, or unlawful appropriation of another's property by design. *See Foxfire*

8

*Village, Inc. v. Black & Veatch, Inc.*, 404 S.E.2d 912, 918 (S.C. Ct. App. 1991). Critically, the claim does not actually require proof of a false representation. *See Ball v. Canadian American Express Co., Inc.*, 442 S.E.2d 620, (S.C. Ct. App. 1994). In determining whether the fraudulent intent element is present, South Carolina employs a kind of totality of the circumstances analysis. *See Floyd v. Country Squires Mobile Homes, Inc.*, 336 S.E.2d 502, 503-04 (S.C. Ct. App. 1985).

The Court is sincerely perplexed by the plaintiff's actions related to the loan. Prior to the last one, the plaintiff had paid every single advance into a designated account of the defendant borrower, College Avenue. (Cox Decl. ¶ 9.) In spite of an Inspector's recommendation adamantly indicating not only a lack of actual progress on the Project but the likely bankruptcy of the contractor, the plaintiff paid the last and largest advance directly to the contractor, TDA Construction, at the request of an individual who had a managing interest in the same, Travis.

The Court cannot guess what the plaintiff had to gain. It was putting its own money at substantial risk. But, the actions raise serious suspicions, and, to the Court, a jury should be permitted to infer the presence of intent beyond a simple breach from the above-described acts. Even now, the plaintiff is ambiguous in its explanation, pointing to unidentified "irregularities" with the designated Borrower account which allegedly prompted it to make payments directly to TDA. (Cox Decl. ¶ 12.) Not only is the explanation incomplete for want of detail but it makes the plaintiff's payment of the advance even more peculiar. Why would the presence of irregularities in the Borrower's account be some basis for ignoring an adamantly cautious recommendation of the inspector and paying an advance to a nearly bankrupt contractor?

The Court finds that, viewing the circumstances in their totality, issues of fact exist as to the defendant's intent and actions in allegedly breaching the contract, whether fraudulent or not.

9

**III. Negligence**

The defendants also contend that the plaintiff is liable for these same alleged acts under a negligence theory. The plaintiff responds that there exists no liability in negligence for its administration of the loan. The Court agrees. The South Carolina Supreme Court has expressly rejected any such liability in negligence, as between a lender and a debtor. *See Roundtree Villas Ass'n, Inc. v. 4701 Kings Corp.*, 321 S.E.2d 46, 50 (S.C.1984). The court in *Roundtree* emphasized that associated inspections are "fundamentally for the protection of the lending institution and do[] not impose upon the lending institution a duty to see that the builder is getting a job free of defects." *Id*. "Both the lender and the borrower have a common interest in seeing that the construction company builds a building free of defects but absent a contract the builder has no common law duty to protect the lender and the lender has no common law to protect the builder." *Id*. And, this is not a situation where, because of foreclosure or otherwise, the lender has actually taken over the project and assumed responsibility for its completion, such that tort duties arise. *See Kirkman v. Parex, Inc.*, 632 S.E.2d 854, 857-58 (S.C. 2006) (involving a lender who foreclosed before construction was complete, took title to the property, and actually sold the house).

The defendants argue that *Roundtree* actually supports its position that the plaintiff owed a duty of care, insofar as the lender in that case was found to have a duty of care after having marketed condominium units and repairing defects in the same. *Roundtree*, 321 S.E.2d at 50-51. The defendants contend, therefore, that the plaintiff assumed a comparable duty in its unilateral decision to alter how it disbursed loan proceeds. The Court cannot see it.

In both *Kirkman* and *Roundtree*, the lender actually assumed some degree of control of the property, made improvements thereon, and/or was partner in efforts to sell the same. In fact, in *Roundtree*, even though a duty of care was found, it was expressly limited to the

10

repairs the lender actually performed.  *Id*.  Likewise, in *Kirkman*, whether or not the lender had impliedly warranted the house turned on whether or not it was "substantially involved in completing the house."  *Kirkman*, 632 S.E.2d at 858.  This Court would not extend the holdings of those decisions under circumstances where the lender has simply altered the way in which it manages the disbursement process, even if improperly so.  As discussed, the defendant may have some recourse in contract for a material deviation in the way the plaintiff was contractually obligated to make payments on the loan, but not in negligence under South Carolina law.

**IV.     Breach of Fiduciary Duty**

The defendant has also claimed that the plaintiff violated a fiduciary duty owed the defendant, in the payment of the last advance.  The parties are in agreement that the relationship of creditor and debtor is not normally fiduciary in nature.  *See American Fed. Bank, FSB v. Parker*, 392 S.E.2d 798, 801 (S.C. Ct. App. 1990); *Burwell v. South Carolina National Bank*, 340 S.E.2d 786, 790 (S.C. 1986).  It is true, however, that in certain limited circumstances where funds are deposited into a special account or are specifically designated to be kept separate, a special trust is created between the creditor and debtor.  *See Rush v. S.C. Nat. Bank*, 343 S.E.2d 667, 668 (S.C. Ct. App. 1986).  To change a general account into a special account, there must be some act, at least on the part of the depositor, tending to segregate funds in the possession of the bank and to segregate them for a particular purpose.  *Id*.  The burden of proving an account is special is on the one claiming it.  *Id*.

No matter what the Agreement actually required or anticipated in regards to the payment of advances into a designated account for the Borrower (Cox Decl., Ex. D. ¶ 8.5) or what the plaintiff had previously done, it is undisputed that the last advance was *not* paid thereto.  Accordingly, at the time the advance was paid to directly to TDA, the monies were ostensibly co-mingled in the plaintiff's general funds.  They were not credited to the

11

defendant College Avenue's designated account and then reappropriated to TDA. In layman's terms, the money was the plaintiff's to do with as it chose. Of course, whether it can now make College Avenue liable for it, is another matter altogether.

But, the Court does not believe facts exist, here, whereby a fiduciary duty was created as to funds not actually ever designated to the Borrower, College Avenue.

## V.  South Carolina Unfair and Deceptive Trade Practices

Lastly, the defendants contend that, in its actions, the plaintiff violated the South Carolina Unfair and Deceptive Trade Practices Act ("SCUDTPA"), S.C. Code § 39-5-10 *et seq*.  To recover, a plaintiff must prove:  1) a violation of the Act, by the commission of an unfair or deceptive act in trade or commerce; 2) proximate cause; and 3) damages. *Schnellmann v. Roettger*, 627 S.E.2d 742, 745-46 (S.C. Ct. App. 2006).  To be associated with "trade or commerce," a defendant's acts must impact the public interest.  *Daisy Outdoor Adver. Co. v. Abbott*, 473 S.E.2d 47, 49 (1996).  An impact on the public interest may be shown if the acts or practices have the potential for repetition.  *Crary v. Djebelli*, 496 S.E.2d 21, 23 (1998). The potential for repetition may be shown by proving that the same kind of actions occurred in the past or by showing that the procedures employed by the defendant create a potential for repetition of the deceptive practices.  *Id*. at 23.  The defendants have offered neither.

The defendants contend that the in the context of this loan the plaintiff repeatedly failed to secure necessary signatures on Change Order requests or the signature of the architect prior to each advance, which was required by the plaintiff's own pay requests. (Def. Ex. H.)  To the Court, this argument is not persuasive.  First, it does not appear that any of these alleged failures to secure signatures were actually in violation of any provision of the Agreement.  So, they necessarily fail to demonstrate a pattern of prior misconduct similar to the one now alleged. Second, it seems circular to allow the defendants to use evidence of a pattern of dealing employed in the context of the contested loan agreement

12

as proof that the same kind of actions have "occurred in the past" regarding other loan transactions.  *See Schnellmann*, 627 S.E.2d at 746 (finding no evidence that in prior transactions square footage had been misstated in MLS listing).

The defendants have not satisfied their burden to demonstrate that the alleged acts of the plaintiff pose sufficient risk to a public interest, such that a SCUDTPA claim may lie. They are, if anything, a private wrong.

**VI.     Damages**

There is some evidence and/or argument as to the outstanding loan balance in this case. (Pl. Mem. Summ. J. at 5.)  As far as the Court feels comfortable, though, the parties have not been sufficiently specific for the Court to make any determination as to whether some portion of the outstanding loan balance might actually be owed to the plaintiff at this point, notwithstanding proof of impermissible conduct by the plaintiff as to certain advances. It seems that there must be some portion of the outstanding debt that is owed to the plaintiff, which is not debatable for any wrongful conduct of the plaintiff.  In other words, it seems that part of the outstanding balance must be comprised of money from advances, which are not questionable.  Issues of fact still remain though and such matter can be later resolved, insofar as portions of the case may still proceed based on this recommendation.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is RECOMMENDED that the plaintiff's motion for summary judgment, should be GRANTED, in part, and DENIED, in part. Specifically, the motion should be GRANTED as to the defendants' counterclaims for breach of contract based on an implied covenant of good faith and fair dealing, negligence, breach of fiduciary duty, and violation of the South Carolina Unfair and Deceptive Trade Practices. Those claims should be dismissed with *prejudice*. The plaintiff's motion should be DENIED as to the defendants' counterclaims for breach of contract and breach of contract accompanied by a fraudulent act and as to its own claims against the defendants for any unpaid balance on the Loan.

IT IS SO RECOMMENDED.

                                                  s/Bruce H. Hendricks
                                                  United States Magistrate Judge

January 22, 2010
Greenville, South Carolina